# IN RE TRUST ESTATE CREATED BY E. H. MOULTON. KATHERINE S. VAN DYKE AND OTHERS v. FIRST NATIONAL BANK OF MINNEAPOLIS.[1]

March 2, 1951.

No. 35,269.

---

[1]Reported in 46 N. W. (2d) 667.

*Snyder, Gale, Hoke, Richards & Janes, George P. Hoke,* and *Melvin D. Heckt,* for appellants.

*James E. Dorsey, Harry A. Blackmun, David R. Brink,* and *Dorsey, Colman, Barker, Scott & Barber,* for respondent.

KNUTSON, JUSTICE.

The facts in this case are not in dispute. On June 1, 1922, E. H. Moulton created an *inter vivos* trust under which he directed payment of income to be made to his daughter, Katherine S. van Dyke, and his two grandchildren, Henry S. van Dyke and Katherine van Dyke, as long as they shall live, with the remainder to designated beneficiaries, in these words:

"The Trustee shall pay the net income therefrom in equal shares to Katherine S. Van Dyke and her two children, Henry S. Van Dyke and Katherine Van Dyke, as long as they shall live, the shares of said Henry S. Van Dyke and Katherine Van Dyke being paid to said Katherine S. Van Dyke for their support, maintenance and education as long as they are under 21 years. In the event of the death of any of said beneficiaries, his or her share of income shall thereafter be paid in equal shares to the survivors, or all thereof to the survivor, as long as he or she shall live, and upon the death of the last survivor, the Trustee shall transfer, set over and deliver the trust fund then remaining in his hands unto the issue of said Henry S. Van Dyke and Katherine Van Dyke taking by right of representation, or if there be no issue of them surviving, then unto the persons then living who would be the heirs at law of Harriet E. Moulton, deceased wife of the party of the first part, as determined by and in the proportions provided by the intestate laws of the State of Minnesota then in force."

The donor died on or about November 12, 1927. The daughter, Katherine S. van Dyke, and the two grandchildren still survive. The granddaughter, Katherine, is married and now goes by the name of Catherine van Dyke Mellen. She has one child, Christopher Riggs Mellen. Henry S. van Dyke was married and has two children by such marriage, Judith Frances van Dyke and Thomas H. van Dyke. The children of Catherine and Henry, being minors, appear by their guardian and guardian *ad litem*.

Incident to a divorce from Barbara, his wife, Henry entered into a property settlement under the terms of which he agreed to assign to Barbara three-fourths of his one-third interest in the income of the trust. Pursuant thereto, he executed assignments intended to carry out such agreement.

About the same time, the three life beneficiaries under the trust executed assignments intended to change the provisions of the trust so that upon the death of one of the grandchildren of

the settlor the children of such deceased beneficiary would receive the income to which he or she had been entitled during his or her lifetime, without waiting until the survivor passed away.

In the divorce decree granted to Barbara by the superior court of Los Angeles county, California, the defendant in the action (Henry) was ordered to execute assignments necessary to carry out the property settlement referred to above.

Copies of these assignments were served upon the trustee, First National Bank of Minneapolis. The trustee refused to be bound by the assignments, contending that they were invalid and that the income from the trust was inalienable. The trustee takes the same position with respect to assignments which attempted to accelerate payment to the great grandchildren of the settlor upon the death of their parent.

This proceeding was brought under the provisions of M. S. A. 501.33, *et seq.*, for a judicial construction of the quoted portion of the trust. The trial court upheld the contentions of the trustee, and from its order this appeal is taken.

It is the contention of appellants that the interests of the life beneficiaries are assignable. The trustee contends that the case is controlled by our decision in First Nat. Bank v. Olufson, 181 Minn. 289, 232 N. W. 337, as construed by subsequent decisions, to which reference will be made hereinafter.

■ The cardinal purpose of construing a will or trust is to ascertain the intention of the testator or settlor. In re Estate of Sherk, 191 Minn. 143, 253 N. W. 365. Not only the trust instrument itself, but the situation of the settlor and his manifest purpose in creating a trust, may be considered. First & American Nat. Bank v. Higgins, 208 Minn. 295, 293 N. W. 585.

"* * * Absent tokens of meaning other than such as the language itself imports, intention must be found exclusively in the language." In re Trust Under Will of Holden, 207 Minn. 211,

215, 291 N. W. 104, 107; First & American Nat. Bank v. Higgins, *supra.*

In In re Trust Created by Watland, 211 Minn. 84, 91, 300 N. W. 195, 198, we said:

"First to be determined is donor's intention as expressed in the language used in the trust instrument. In that determination we are to be guided by the well known principle that the entire instrument must be considered, 'aided by the surrounding circumstances, due weight being given to all its language, with some meaning being given, if possible, to all parts, expressions and words used, discarding and disregarding no parts as meaningless, if any meaning can be given them consistently with the rest of the instrument.' Dumaine v. Dumaine, 301 Mass. 214, 218, 16 N. E. (2d) 625, 628, 118 A. L. R. 834, 839; In re Trusteeship Under Will of Ordean, 195 Minn. 120, 261 N. W. 706."

In In re Trusts Under Will of McCann, 212 Minn. 233, 240, 3 N. W. (2d) 226, 230, we quoted the following with approval from Dumaine v. Dumaine, 301 Mass. 214, 222, 16 N. E. (2d) 625, 629, 118 A. L. R. 834:

"'* * * It is not for the court to read into a trust instrument provisions which do not expressly appear or which do not arise by implication from the plain meaning of the words used, * * *.'"

■ Trusts in which the power of alienation has been suspended, probably for historic reasons, have acquired the name of spendthrift trusts. Restatement, Trusts, § 152; 1 Scott, Trusts, § 151; Jones v. Harrison (8 Cir.) 7 F. (2d) 461.

■ It is not necessary that the beneficiary be a spendthrift or an improvident person in order that the validity of such trusts be upheld. 1 Scott, Trusts, § 151; Annotation, 119 A. L. R. 23; Restatement, Trusts, § 152, *comment g;* 1 Bogert, Trusts and Trustees, § 222.

■ The validity of a spendthrift trust is upheld on the theory that the owner of property, in the free exercise of his will in dis-

posing of it, may secure such benefits to the objects of his bounty as he sees fit and may, if he so desires, limit its benefits to persons of his choice, who part with nothing in return, to the exclusion of creditors and others. Nichols v. Eaton, 91 U. S. (Otto) 716, 23 L. ed. 254; First Nat. Bank v. Olufson, 181 Minn. 289, 232 N. W. 337; Erickson v. Erickson, 197 Minn. 71, 266 N. W. 161, 267 N. W. 426; In re Estate of Lee, 214 Minn. 448, 9 N. W. (2d) 245; 1 Bogert, Trusts and Trustees, § 222.

In Morgan's Estate, 223 Pa. 228, 230, 72 A. 498, 499, 25 L.R.A. (N.S.) 236, 132 A. S. R. 732, we find the following statement:

"* * * The law rests its protection of what is known as a spend-thrift trust fundamentally on the principle of cujus est dare, ejus est disponere. It allows the donor to condition his bounty as suits himself, so long as he violates no law in so doing. When a trust of this kind has been created, the law holds that the donor has an individual right of property in the execution of the trust; and to deprive him of it would be a fraud on his generosity. For the law to appropriate a gift to a person not intended would be an invasion of the donor's private dominion: * * * It is always to be remembered that consideration for the beneficiary does not even in the remotest way enter into the policy of the law; it has regard solely to the rights of the donor. Spendthrift trusts can have no other justification than is to be found in considerations affecting the donor alone."

■ No particular form of words is necessary to create a spend-thrift trust. It is sufficient if by the terms of the trust the settlor manifests an intention to impose the restrictions common to such trust. 1 Scott, Trusts, § 152.4; Jones v. Harrison (8 Cir.) 7 F. (2d) 461, *supra;* Restatement, Trusts, § 152, *comment c.*

■ Provisions restraining alienation by the beneficiary or placing the benefits of the trust beyond the reach of creditors are often expressed in the trust instrument itself, but an intent to restrain alienation may be inferred from the instrument when read as a

whole. Erickson v. Erickson, 197 Minn. 71, 266 N. W. 161, 267 N. W. 426, *supra.*

It has been held that the fact that the property is placed in trust is itself evidence that the settlor intended it to be inalienable. Lancaster County Bank v. Marshel, 130 Neb. 141, 264 N. W. 470; Bennett v. Bennett, 217 Ill. 434, 75 N. E. 339, 4 L.R.A.(N.S.) 470; Stambaugh's Estate (Appeal of Grothe) 135 Pa. 585, 19 A. 1058; Higbee v. Brockenbrough (Mo.) 191 S. W. 994.

In Jones v. Harrison (8 Cir.) 7 F. (2d) 461, 465, the court said:

"It is manifest that, if the interest of the beneficiary in a trust is as fully subject to his disposal, and to seizure by his creditors, as it would have been if willed directly to him, then such a trust, instead of being a safeguard for the protection of the beneficiary, becomes a means for the improvident dissipation of the subject-matter of the trust; for it is a matter of common knowledge that the sale or incumbrance of such an interest is always made upon the most onerous terms, and that credit extended to such a beneficiary on the faith of his interest always takes heavy toll on account of the hazard. * * * Such considerations as these give an impressive force to the placing of the property in trust, as evidencing the intent of the testator to put it beyond the reach of such sacrifice and waste."

■ We need not consider the effect of M. S. A. 501.20[2] or 501.14.[3]

[2]"No person beneficially interested in a trust for the receipt of rents and profits of the lands can assign, or in any manner dispose of, such interest; provided, the power to sell or sign or transfer such beneficial interest shall in no manner be abridged or curtailed, where such beneficial interest in the first instance shall have been acquired by purchase; but the rights and interest of every person for whose benefit a trust for the payment of a sum in gross is created are assignable."

[3]"When a trust is created to receive the rents and profits of lands and no valid direction for accumulation is given, the surplus of such rents and profits, beyond the sum necessary for the education and support of the person for whose benefit the trust is created, shall be subject in equity to the claims of his creditors in the same manner as other personal property which cannot be reached by an execution at law."

It is evident from the case of Simmons v. Northwestern Trust Co. 136 Minn. 357, 162 N. W. 450, L. R. A. 1917F, 736, that these statutory provisions are inapplicable to the trust here involved.

■ It is the general rule that the interest of a beneficiary in a trust is assignable, may be reached by creditors, and is subject to attachment in the absence of statutory provision or of provisions in the trust instrument providing otherwise. That is true of income as well as corpus, nothing appearing in the trust expressly or by implication to the contrary. Simmons v. Northwestern Trust Co. 136 Minn. 357, 162 N. W. 450, L. R. A. 1917F, 736. It is probably true that the weight of authority holds that where income is payable to a beneficiary of a trust for life or for a stated term, and nothing more appears from the instrument itself, the beneficial interest is alienable and may be reached by creditors in the absence of statutory provisions restraining the alienability of such interest. 54 Am. Jur., Trusts, § 107; Restatement, Trusts, §§ 132, 147; 1 Scott, Trusts, §§ 132, 147. Our early cases are in accord. In Merriam v. Wagener, 74 Minn. 215, 77 N. W. 44, we held that the beneficial interest in the residue is alienable, may be reached by creditors, and is subject to attachment.

In Simmons v. Northwestern Trust Co. *supra,* certain property was devised and bequeathed to the trustee to pay the income to testator's sister for life, with remainder over to two other sisters. Nothing in the will disclosed any incompetence on the part of the life beneficiary. Evidence dehors the record was admitted over objection to show that the purpose of the trust was to prevent the life beneficiary's husband from reaching the property. After a divorce from her husband, plaintiff, the life beneficiary, acquired the reversionary interest of the residuary beneficiaries by conveyance. She then demanded the property from the trustee on the ground that the purposes of the trust had been accomplished. The court refused to pass on the question of whether the purposes for which the trust was created might be shown by extrinsic evidence where it did not appear from the face of the instrument, expressly

or by fair implication, but expressed doubt as to the admissibility of such evidence. With respect to alienability, the court said (136 Minn. 360, 162 N. W. 451) :

"* * * There can be no serious doubt of her right of alienation, not only of the *corpus* of the estate, but also the income, since the will contains nothing inconsistent with the exercise of such right. Perry, Trusts, § 386; Patton v. Patrick, 123 Wis. 218, 101 N. W. 408; Bennett v. Chapin, 77 Mich. 526, 43 N. W. 893, 7 L. R. A. 377; Brooks v. Davis, 82 N. J. Eq. 118, 88 Atl. 178; 39 Cyc. 234, and authorities there cited."

Even our later cases recognize the general rule of alienability. In Erickson v. Erickson, *supra,* in upholding a spendthrift provision expressed in the trust in that case, we said (197 Minn. 78, 266 N. W. 164) :

"* * * As a general proposition, when a donor leaves the interest of the beneficiary assignable or transferable it may be reached by creditors. If by appropriate language the right to transfer is completely restrained, then such interest may not be reached by creditors either at law or by equitable proceeding."

■ It is the contention of the trustee that the case now before us is controlled by our decision in First Nat. Bank v. Olufson, 181 Minn. 289, 232 N. W. 337. In that case, the testator devised and bequeathed one-third of his estate to a named trustee for the benefit of his daughter Minda, expressed in these words (181 Minn. 290, 232 N. W. 337) :

"An undivided one-third part thereof and interest therein to Christian Kopperud, in trust for Minda Olufson, for the following uses and purposes: a. Said trusteeship shall continue as long as John Olufson lives or as long as he is the husband of said Minda Olufson. b. Said trustee shall annually pay to said Minda Olufson the net income from her share. c. Said trustee shall hold and

manage said share and property as a trust fund, and shall have full authority and is hereby empowered to sell land, mortgage land, reinvest, and do any and all things with reference to said property in his hands as such trustee as he shall consider to be for the best interests of said trust and said Minda Olufson. Said trusteeship shall terminate in the event that said Minda Olufson dies before John Olufson and while his wife."

The case arose on the complaint of a judgment creditor of Minda, who sought to reach her interest in the trust to satisfy the judgment which had been obtained against her. A general demurrer to the complaint on the ground that it did not state a cause of action was sustained, and, on appeal, we affirmed. The question raised was whether the interest of the beneficiary was immune from the claims of creditors. There is no evidence dehors the record to show any intention of the testator, and we must rely solely on the words of the will creating the trust. In affirming, we said (181 Minn. 291, 294, 232 N. W. 338, 339):

"* * * While not a spendthrift trust, it is clear that the purpose of the donor was to secure to his daughter Minda the sole use and benefit of the income from the property and to protect the income and the property from the control of and acquisition by others, especially to protect same from her husband. There is no provision in the instrument creating the trust for the transfer or passing of any title to the trust property to her. All she is expressly given is the income therefrom. To hold that creditors or others may now come in and take away the income or the property will destroy the trust and defeat the clear purpose of the donor. He says that this income is to be paid by the trustee to his daughter. We are asked to say that the income shall be diverted and paid to her creditors.

* * * * *

"We conclude that during the existence of this trust a creditor of Minda Olufson cannot reach either the trust property or the income therefrom. After the income comes into the hands of Minda

it then of course becomes part of her general estate and subject in like manner as her other property to claims of creditors."

Our holding that the trust was not a spendthrift trust, followed by the application to it of the incident of inalienability generally attributable only to spendthrift trusts, absent statutory provisions, has been severely criticized. Bunn, *Spendthrift Trusts in Minnesota*, 18 Minn. L. Rev. 493, 501. However, it seems clear that what we intended to say was that the trust was not expressly declared to be a spendthrift trust, but that the intention of the testator to provide an income for his daughter was clearly apparent from the instrument, and from that the restraint on alienation common to spendthrift trusts would be implied.[4]

Prior to the decision in the Olufson case, it was an open question in this state whether spendthrift trusts would be upheld at all. Dictum in the early case of In re How, 61 Minn. 217, 218, 63 N. W. 627, where we said: "It is well settled that by the intervention of a trustee the donee of * * * a gift may be given the benefit thereof, exempt from seizure to satisfy her debts," indicated that such provisions would be upheld. That they are now valid and that we considered the trust in the Olufson case a spendthrift trust by implication is evident by what we said in Erickson v. Erickson, 197 Minn. 74, 266 N. W. 162: ·

"* * * That a spendthrift trust is valid in this state cannot well be denied after what was said by this court in First Nat. Bank v. Olufson, 181 Minn. 289, 232 N. W. 337."

The great weight of authority in this country today is in accord in upholding spendthrift trusts. See, Annotations, 119 A. L. R. 24, and 138 A. L. R. 1319.

Text writers generally have criticized our decision in the Olufson case and have generally reached the conclusion that as a result of this decision all trusts in Minnesota providing for the payment

---

[4]See discussion of Olufson case, Annotation, 119 A. L. R. 55.

of income to the beneficiary for life, without more, are spendthrift trusts.[5] Our cases do not go that far.

In Erickson v. Erickson, *supra,* referring to the Olufson case, we said (197 Minn. 74, 226 N. W. 162):

"* * * Nevertheless, it was held that the language of the trust under the circumstances of that case evinced a clear intent to place the property and the income therefrom beyond the reach of creditors."

The court in the Erickson case also took note of the fact that prior to the divorce of the parties (197 Minn. 77, 266 N. W. 163) "the

---

[5]Griswold, Spendthrift Trusts (2 ed.) § 195, where the author says:

"* * * the Minnesota court has upheld spendthrift trusts in a wholehearted fashion, holding that the interest of the beneficiary of a trust (including both personal property and land) was wholly free from the claims of creditors, although the trust instrument imposed no express restraint on alienation. [Citing the Olufson case.] A few weeks later the court wrote a dictum to the same effect in a case involving a trust of personal property, where there were express restraints on alienation. [Citing Erickson v. Erickson.] These decisions not only establish spendthrift trusts in Minnesota, but they apparently make every trust a spendthrift trust."

In 15 Minn. L. Rev. 581, Notes, the author says:

"The Olufson Case, then, appears to establish the validity of common law spendthrift trusts in Minnesota. The opinion indicates that any trust to pay income to another for a period not exceeding life may be considered such a trust."

In an article in 18 Minn. L. Rev. 493, at 503, Charles Bunn says:

"It has already been suggested that when courts find restraints intended on such inconclusive language [referring to the Olufson case] the real reason may be that they have for the moment overlooked the first general proposition, that such interests are assignable unless restrained. It is believed this happened in the Olufson case. The court says:

" 'To hold that creditors or others may now come in and take away the income or the property will destroy the trust and defeat the clear purpose of the donor. He says that this income is to be paid by the trustee to his daughter. We are asked to say that the income shall be diverted and paid to her creditors.'

"In other words, any trust to pay income is a spendthrift trust." See, also, 21 Minn. L. Rev. 80; 1 Scott, Trusts, § 152.4.

will stood without spendthrift provision," at least implying that without such provisions it would not have been held to be a spendthrift trust. The court further said (197 Minn. 78, 266 N. W. 164):

"* * * If *by appropriate language* the right to transfer is completely restrained, then such interest may not be reached by creditors * * *." (Italics supplied.)

Again, in In re Estate of Lee, 214 Minn. 448, 454, 9 N. W. (2d) 245, 248, we indicated that something more than the mere provision that the trustee shall pay income to the beneficiary for a stated period is necessary for the establishment of a spendthrift trust when we said:

"* * * It is well established that the creator of a trust may secure the enjoyment of it to the objects of his bounty *by providing* that it shall not be alienated by them or become subject to be taken by creditors." (Italics supplied.)

Appellants seek to distinguish the Olufson case from the case now before us principally on two grounds: First, that the Olufson case merely holds that the creditors of the beneficiary could not reach the property or income held by the trustee, but that it did not hold that the beneficiary could not voluntarily assign her interest. Ordinarily, no distinction has been made between voluntary and involuntary alienability of the interest of a beneficiary in these trusts. In Jones v. Harrison (8 Cir.) 7 F. (2d) 461, 465, the court said:

"Equitable trust interests, restricted as to creditors, do not pass to trustees in bankruptcy, though assignable by the beneficiary. This results from the fact that an estate put in trust, and expressly restricted as to creditors, sufficiently evidences an intent by the testator to impose a restriction also upon the beneficiary's power to alienate or encumber. * * *

"The converse of this is also true. A restriction as to the beneficiary's power to alienate will protect a trust as against creditors."

See, Annotations, 119 A. L. R. 24, and 138 A. L. R. 1321.

The second ground upon which appellants seek to distinguish the cases is that the following language in the Olufson trust may have led the court to assume not only that the donor was spendthrift-minded against his son-in-law, but also against the creditors of the beneficiary (181 Minn. 290, 232 N. W. 337):

"* * * and do any and all things with reference to said property in his hands as such trustee as he shall consider to be for the best interests of said trust and said Minda Olufson."

It is clear that the quoted portion of the Olufson trust deals only with the powers granted to the trustee to manage the trust property. Similar provisions are found in the trust in the instant case, only in more detail.[6] Neither trust gives the trustee any discretion in determining whether payment shall or shall not be made to the beneficiary. Cases involving discretionary trusts or trusts for support, the amount of which is to be determined by the trustee, are not in point. It seems quite impossible to distinguish the two trusts on that ground.

---

[6]"The Trustee shall hold, manage and control the said property until a sale thereof be deemed advisable by him after due investigation; shall invest and reinvest the principal proceeds arising therefrom in his discretion in good, income-producing property; shall collect, receive and receipt for the income, interest and profits arising therefrom; and shall apply and distribute the income and distribute the income and principal as follows:

* * * * *

"The party of the second part as Trustee shall have and is hereby given full power and authority to receive all sums of money due by the terms of the evidences of indebtedness and other instruments hereby assigned; to invest and reinvest the same in such securities as aforesaid; to sell and assign all of said personal property and any that may at any time become a part of said trust estate or come into his hands pursuant thereto; to sell, convey, demise, let, lease, ground-lease, or exchange any real estate which may at any time become a part of said

■ Appellants next contend that even though a spendthrift trust be implied the assignment should nevertheless be upheld because it is against public policy to permit the restraint of alienation where the rights of a spouse to alimony or of children to support are involved. There is much respectable authority supporting appellants' contention in this respect. Restatement, Trusts, § 157; 6 Dunnell, Supp. § 9886c (see note under 29n) ; 1 Bogert, Trusts and Trustees, § 223; Knettle v. Knettle, 197 Wash. 225, 84 P. (2d) 996. The case of Moorehead's Estate, 289 Pa. 542, 137 A. 802, 52 A. L. R. 1251,[7] is cited by appellants and has been cited frequently in support of this contention. It is interesting to note that the later case of Lippincott v. Lippincott, 349 Pa. 501, 37 A. (2d) 741, limits the right to deserted and neglected wives who are not divorced and holds that claims of a divorced wife for alimony cannot reach a spendthrift trust.

The difficulty with appellants' position is that we have already rejected this contention. In Erickson v. Erickson, *supra,* we said (197 Minn. 78, 266 N. W. 164) :

"* * * When unrestrained by statute, it is the intent of the donor, not the character of the donee's obligation, which controls the availability and disposition of his gift."

The Erickson case was cited and followed in the later case of Lamberton v. Lamberton, 229 Minn. 29, 38 N. W. (2d) 72. It has been followed by courts in other jurisdictions. Roorda v. Roorda, 230 Iowa 1103, 300 N. W. 294. Other courts have taken substantially the same position. Bucknam v. Bucknam, 294 Mass. 214, 200 N. E. 918, 104 A. L. R. 774; Eaton v. Eaton, 81 N. H. 275, 125 A. 433, 35 A. L. R. 1034.

---

trust estate investing and reinvesting in securities as aforesaid the principal proceeds from the sale thereof as the same are received by him from time to time; and to make, execute and deliver any and all instruments necessary or incidental to the proper carrying out of this agreement in every respect."

[7]See criticism of this decision in note, 76 U. of Pa. L. Rev. 220.

In considering a similar question, the Massachusetts court in Burrage v. Bucknam, 301 Mass. 235, 239, 16 N. E. (2d) 705, 706, said:

"* * * Presumably she [the testatrix] expected that he [the beneficiary] would do his duty by his wife and by his children, if he should have any, although she intended to give him protection against creditors until he should reach the age of thirty, but we can find nothing whatever to suggest that she intended to do his duty for him in her will."

In Schwager v. Schwager (7 Cir.) (1940) 109 F. (2d) 754, the circuit court of appeals, on an appeal from the district court for the eastern district of Wisconsin, quotes at length from our Erickson case and follows it, there being no controlling decision at that time from the supreme court of Wisconsin. However, in Dillon v. Dillon (1943) 244 Wis. 122, 11 N. W. (2d) 628, the Wisconsin court refused to follow the Schwager case and, instead, followed the case of Moorehead's Estate, 289 Pa. 542, 137 A. 802, 52 A. L. R. 1251, *supra,* and Restatement, Trusts, § 157(a). The case of Lippincott v. Lippincott, 349 Pa. 501, 37 A. (2d) 741, *supra,* was decided in 1944, limiting the right to support for an undivorced wife. The Wisconsin court did not have this decision when the Dillon case was decided and applied the rule of the Moorehead case to alimony as well as to support of an undivorced wife or support of children. In the later case of Will of Razall (1944) 245 Wis. 416, 14 N. W. (2d) 764, the court was evenly divided and affirmed, but the facts do not appear in the opinion. Some of the facts may be gleaned from the same case found in 243 Wis. 15, 9 N. W. (2d) 72, and 243 Wis. 152, 9 N. W. (2d) 639.

It is easy to see that the courts are hopelessly divided on this question. The cases pro and con are collected in Annotations, 35 A. L. R. 1035, 52 A. L. R. 1259, 104 A. L. R. 779.

It is sufficient to say that the law on this subject is settled in this state and that, once it is established that a spendthrift trust exists, either by express provisions of the instrument or by implication,

the beneficiary's interests can no more be reached in the hands of the trustee for alimony or support than for any other debt or obligation.

We then arrive at the determinative question, and that is simply this: Is there any difference in the two trusts so that intent to restrain alienation found by the court in the Olufson case is absent here? In the Olufson case, the court implied a spendthrift trust from the fact that all the beneficiary is given is the right to receive the income. The decision there is based on the fact that (181 Minn. 291, 232 N. W. 338) "He [the testator] says that this income is to be paid by the trustee to his daughter. We are asked to say that the income shall be diverted and paid to her creditors."

The settlor in the instant (Moulton) trust provided in identical language that the income shall be paid to his daughter and grandchildren and the survivor of them for life. At that time his two grandchildren were minors. He provided that the income should be paid to the daughter "for their support, maintenance and education as long as they are under 21 years." He further provided that the corpus of the trust should be paid to great grandchildren, but only after the death of the survivor of the three life beneficiaries. It is evident that the manifest intent to have the income go to the life beneficiaries as long as they live, and not be diverted, is at least as clear as it was in the Olufson case. It was obviously the intent of the settlor that he would provide a suitable income for his immediate descendants, free from the care and responsibility of management of his property, and that he would prefer his immediate descendants, so long as any of them should survive, to those more remote. The will is drawn so that in no event will the income from the trust ever become payable to the husband or wife of the donor's grandchildren. It is to be paid to his daughter and two grandchildren and the survivor of them for life. Upon the death of the survivor of the three, the corpus goes to the issue of the grandchildren by right of representation, and if there are no issue it goes

to the heirs of the donor's wife. In no event could it ever become payable to the husband of Catherine or the wife of Henry.

We reach the conclusion that there is no distinction to be found between the Olufson trust and the one here involved, and we must either follow it or overrule it. Were it not for the historic dislike of the law for restraints on alienation, we would find little difficulty in holding that by giving literal interpretation to the words that the income is to be paid to the named beneficiaries for life we would simply be carrying out the expressed intent of the settlor. In order to avoid the rule that the beneficial interest is alienable unless it is restrained by statute or by the trust instrument, we find it necessary to imply such restraint from the purposes for which the trust was created and the manner in which it was to be carried out. That is exactly what was done in the Olufson case.

That the decision in the Olufson case is out of harmony with the decisions of many other courts cannot well be denied. That it has now been the law of this state for over 20 years is equally true. Disregard for the rule of *stare decisis* in the field of trust and property law can lead only to the destruction of vested rights created in reliance upon the decisions of this court. Even if we should decide otherwise were the case now one of first impression, the rule established by the Olufson case has become so firmly established as part of the law of this state that it seems to us that less harm will result from adhering to it than would result were we now to discard it. It is reasonable to believe that trusts have been created and rights acquired in reliance upon this decision and the construction placed upon it by text writers and the bar in general. If the rule is now to be changed, it should be done by legislative rather than by judicial action, and then only so that the change would operate prospectively so as to leave unimpaired rights created in reliance upon the law as it has existed for these many years. See, Becker v. Chester, 115 Wis. 90, 130-131, 91 N. W. 87, 101-102; Danforth v.

304

City of Oshkosh, 119 Wis. 262, 273, 97 N. W. 258, 262. In Congdon v. Congdon, 160 Minn. 343, 370, 200 N. W. 76, 86, we said:

"* * * Even an erroneous interpretation of a legislative enactment acquiesced in for such length of time ought not to be disturbed. Otherwise confusion, uncertainty and bad law must follow."

The same should be true of our decision law.

We conclude that the intention of the settlor in the trust here involved to limit the benefits of the trust to the beneficiaries individually is implicit in the instrument and that the intent to restrain alienation should be implied from the language of the instrument and the manifest purpose and plan of the trust itself. From this conclusion, it follows that the interests of the beneficiaries are inalienable and that the decision of the trial court is correct.

Affirmed.