**In re Martin E. HANSEN, Debtor.**

**Michael J. IANNACONE,
Trustee, Plaintiff,**

v.

**TRUSTEES OF PILLSBURY COMPANY STOCK PURCHASE AND INVESTMENT PLAN and Martin E. Hansen, Defendants.**

**Bankruptcy No. 3–86–1463.
Adv. 3–87–30.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Oct. 21, 1987.

Michael J. Iannacone, St. Paul, Minn., Trustee, pro se.

Ann Morelli Spencer, Minneapolis, Minn., for debtor.

William J. Joanis, Minneapolis, Minn., for trustees of Pillsbury Co. Stock Purchase and Inv. Plan.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT MARTIN E. HANSEN'S MOTION FOR SUMMARY JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding for turnover of property alleged to be property of Debt-or's bankruptcy estate comes on before the undersigned United States Bankruptcy Judge in chambers upon Plaintiff's and Defendant Martin E. Hansen's cross-motions for summary judgment. Chapter 7 Trustee Michael J. Iannacone appears *pro se*. Defendants appear by Ann Morelli Spencer, attorney for Debtor, and William J. Joanis, attorney for the Trustees of The Pillsbury Company Stock Purchase and Investment Plan. Counsel have agreed to submit the matter on the basis of written briefs and stipulated document-exhibits. Upon the record thus made, the Court concludes that Plaintiff's motion for summary judgment must be granted.

## FINDINGS OF FACT

1. That Defendant Martin E. Hansen (hereinafter referred to as "Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code in this Court on May 22, 1986.

2. That Debtor, age 53, has been employed by the Pillsbury Company (hereinafter "Pillsbury") as a professional engineer since October 1961.

3. That Debtor's original Schedules B–3 and B–4 did not contain any entry for Debtor's interest in the Pillsbury Company Stock Purchase and Investment Plan.

4. That on his amended Schedule B–3, filed on March 6, 1987, Debtor listed his interest in "Pillsbury Company's Stock Purchase and Investment Retirement Plan," scheduling its value as unknown. On his amended Schedule B–4, Debtor claimed this asset exempt pursuant to MINN.STAT. § 550.37 subd. 24.

5. That on March 19, 1987, Plaintiff, acting as trustee of Debtor's bankruptcy estate, timely filed an objection to Debtor's claim of exemption in the Pillsbury Company Stock Purchase and Investment Plan (hereinafter "the Plan").

6. That review of the written instrument creating and governing the Plan reveals the following relevant characteristics:

a. Participation in the Plan is optional with the employee (Section 2.3);

b. A participating employee authorizes Pillsbury to reduce the employee's compensation by 10 percent of his profit-sharing earnings (Section 2.3), which is defined as basic compensation exclusive of incentive earnings, bonuses, prizes or awards (Section 4.5). The resulting amount is termed the "employer basic contribution" and vests immediately (Sections 9.1 and 9.2).

c. Pillsbury contributes an "employer supplemental contribution" in the amount of 50 percent of the basic contribution, which cannot exceed 2 percent of profit sharing earning for any participant and which fully vests after five years of employment.

d. After-tax employee contributions made under Pillsbury's prior stock purchase plan as of May 31, 1982, the day before the effective date of the present Plan, are placed in a separate "investment plan account" (Section 6.1). As of May 31, 1986, the total amount of Debtor's contributions in this account was $12,181.55.

e. A participant, with the consent of the committee governing and enforcing the plan, may elect to withdraw all or any portion of the net credit balance in his investment plan account.[1] As of May 31, 1986, the amount available for Debtor's general withdrawal was $37,950.50, which represents the Debtor's after-tax contributions and the earnings thereon.

f. A participant may elect to withdraw in cash 90 percent of the employer basic contribution (Section 4.2).

g. A participant, with the consent of the committee, may elect to withdraw all or any portion of the net credit balance in his basic contribution account if such withdrawal is deemed necessary in light of immediate and heavy financial needs of the participant (Section 7.2). As of May 31, 1986, the amount available for Debtor's financial hardship withdrawal was $69,066.56.

h. An employee can apply for a loan from his account not to exceed the lesser of $50,000.00 or 50 percent of the amount he would be entitled to receive upon his retirement, resignation, dismissal, disability or death (Section 7.4). As of May 31, 1986, the amount available to Debtor for loan withdrawal was $48,298.04.

i. Upon his retirement, resignation, dismissal, disability or death, a participant is entitled to receive the balance of his vested interest in his investment plan account, his basic contribution account, and his supplemental contribution account by payment in a lump sum or periodic payments as specified in Section 9.4 (Section 9.1). As of May 31, 1986, the value of Debtor's vested interest in these three accounts was $96,596.08.

j. A participant's voluntary or involuntary alienation of his interest in the Plan is prohibited (Section 12.8). However, effective January 1, 1985, the committee was required to direct the trustee or insurer to make all payments for family support required by a qualified domestic relations order within the meaning of Section 414(p) of the Internal Revenue Code, 26 U.S.C. § 414(p).

## CONCLUSIONS OF LAW

Plaintiff commenced this adversary proceeding to compel the turnover of Debtor's interest in the Plan on the grounds that it was property of Debtor's bankruptcy estate under 11 U.S.C. § 541(a) and because Debtor had not claimed his interest in the Plan as exempt on his original Schedule

---

**1.** Several amendments to the Plan, effective in January or June of 1987, further qualify a participant's right to withdraw or borrow funds. These amendments are not relevant to the instant proceeding because the rights Debtor had under the Plan as of the commencement of his bankruptcy case determine what property constitutes property of the estate under 11 U.S.C. § 541(a).

B–4. Defendants contended that Debtor's interest in the Plan was exempt (Debtor having filed an amended Schedule B-4 shortly after being served with the complaint) and that, in any event, Debtor's interest was excluded from the estate by operation of 11 U.S.C. § 541(c)(2). Plaintiff timely filed an objection in the main case to Debtor's claim of exemption in the Plan[2] on the grounds that they were not reasonably necessary to the support of Debtor or any of his dependents. At the April 22, 1987 hearing on Plaintiff's objections to exemptions, all parties agreed to defer proceedings on exemption-related issues until the Court ruled on the § 541(c)(2) issue joined in the adversary proceeding. This issue is the one at bar.

Under BANKR.R. 7056 and FED.R. CIV.P. 56, summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The parties assert that the issues joined in this adversary proceeding are appropriate for summary adjudication based on the terms of the Plan itself. The Court agrees.

Before reaching the § 541(c)(2) issue, one must determine what constitutes property of the estate under 11 U.S.C. § 541(a)(1). Section 541(a)(1) provides that the filing of a bankruptcy petition creates an estate comprised of all of the following property, wherever located and by whomever held:

> (1) ... In all legal and equitable interests of the debtor in property as of the commencement of the case.

Congress intended that the scope of property interests passing into the bankruptcy estate would be broad, and would include all kinds of property, whether tangible or intangible, as well as causes of action and all of the other types of interest previously treated as property of the estate under the Bankruptcy Act of 1898. H.R.REP. No. 595, 95th Cong., 1st Sess. 367 (1977); S.REP. No. 989, 95th Cong., 2d Sess. 82

(1982), U.S. Code Cong. & Admin. News 1978, p. 5787; *In re Schauer,* 62 B.R. 526, 529 (Bankr.D.Minn.1986).

By contrast, the exclusion from the estate created by 11 U.S.C. § 541(c)(2) is narrow in scope. In *In re Graham,* 726 F.2d 1268 (8th Cir.1984), the Eighth Circuit extensively examined the legislative history of § 541(c)(2) and determined that Congress intended by § 541(c)(2) to preserve the status of traditional spendthrift trusts as recognized by state law and enjoyed under the old Bankruptcy Act. *Graham,* 726 F.2d at 1271. *Accord, In re Goff,* 706 F.2d 574 (5th Cir.1983). *See also In re Lichtstrahl,* 750 F.2d 1488 (11th Cir.1985).

■ Hence, property is excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2) only if it qualifies as a valid spendthrift trust under state law. In Minnesota, spendthrift trusts are governed by common law, there being no Minnesota statute expressly governing them. Generally, in Minnesota, a spendthrift trust is one in which (1) the settlor of the trust is not the beneficiary; (2) the trust contains an anti-alienation clause prohibiting voluntary and involuntary transfer of the beneficiary's interest; and (3) the beneficiary has no present dominion or control over the trust corpus. *See, In re Moulton's Estate,* 233 Minn. 286, 46 N.W.2d 667 (1951); *In re Werner,* 31 B.R. 418, 421 (Bankr.D.Minn. 1983).

■ When one applies the three-prong Minnesota test to the trust created by the Plan, it is clear that the trust does not qualify as a spendthrift trust because it lacks *all* of the elements essential to a spendthrift trust under Minnesota law.

First, at least to the extent that the Plan is funded by the employee, the settlor is the beneficiary. It is arguable (though the Court need not here determine) that the mere fact that the employee contributes anything at all to the trust is fatal to a finding of a spendthrift trust. As the Court stated in *Matter of Witlin,* 640 F.2d 661 (5th Cir.1981):

---

**2.** Plaintiff also objected to Debtor's claim of exemption in the Pillsbury Salaried Retirement

Plan, a separate asset which is not at this point the subject of turnover proceedings.

A spendthrift trust is one that is created with the view of providing a fund for the maintenance *of another,* and at the same time securing it against his own improvidence or incapacity for self-protection. The typical spendthrift trust is one in which the life's cestui's right to recover income is inalienable, either by his own act or that of his creditors, during all or a part of the life of the beneficiary.

640 F.2d at 663 (emphasis added).

The Minnesota Supreme Court in *Moulton's Estate, supra,* articulated the theory behind spendthrift trusts as follows:

The validity of a spendthrift trust is upheld on the theory that the owner of property, in the free exercise of his will in disposing of it, may secure such benefits to the objects of his bounty as he sees fit and may, if he so desires, limit its benefits to persons of his choice, *who part with nothing in return,* to the exclusion of creditors and others.

46 N.W.2d at 670 (emphasis added). *See also Nichols v. Eaton,* 91 U.S. (1 Otto) 716, 23 L.Ed. 254 (1875). Clearly, then, an employee who contributes to the Plan cannot be likened to the generous and wealthy uncle who gratuitously creates a trust for the future maintenance of his improvident nephew. The disbursement of trust fund proceeds which the employee or his designated beneficiary receives upon his retirement, resignation, dismissal, disability, or death is not gratuitous. In point of fact, the participating employee forgoes the present enjoyment of his full income in return for the deferred enjoyment of the withheld income, and the personal financial security which the arrangement promises.

As to the second prong of the test, the prohibition against voluntary and involuntary alienation contained in Section 12.8 of the Plan is not all-encompassing. The trust entitlement may be reached for family support claims pursuant to a qualified domestic relations order. In several states, obligations for alimony and support transcend the provisions of a spendthrift trust and may thwart the intent of the settlor that the trust corpus and income be immune from all obligations of the benefi-

ciary. *See* 35 A.L.R. 1035, 52 A.L.R. 1259, 104 A.L.R. 779. However, the law in Minnesota since 1936 has been that a spendthrift trust cannot be reached by claims of alimony or support. In *Erickson v. Erickson,* 197 Minn. 71, 266 N.W. 161 (1936), the Minnesota Supreme Court stated:

When unrestrained by statute, it is the intent of the donor, not the character of the donee's obligation, which controls the availability and disposition of his gift. The donee's obligation to pay alimony or support money, paramount though it may be, should not, in our opinion, transcend the right of the donor to do as he pleases with his own property and to choose the object of his bounty.... The obligation for alimony and support money may be of a higher rank than other debts, but it is nevertheless an obligation in the nature of a debt, and if, as here, no assignment could be made, if no title could reach the beneficiary until the actual receipt of funds, then equity may not enforce claims of any nature against it.

197 Minn. at 78, 266 N.W. at 165. Subsequent cases have consistently held that a spendthrift trust in Minnesota is immune from claims of alimony or support. *See Lamberton v. Lamberton,* 229 Minn. 29, 38 N.W.2d 72 (1949); *In re Moulton's Estate,* 233 Minn. 286, 46 N.W.2d 667 (1951); *In Matter of Campbell's Trusts,* 258 N.W.2d 856 (Minn.1977). Hence, the trust fails to satisfy the second prong of the test, because Section 12.8 of the Plan permits withholding of proceeds from the fund to meet family support obligations.

It is on the third prong, however, that the Plan's lack of compliance with Minnesota standards for a spendthrift trust is most evident. Several provisions of the Plan enable the employee-beneficiary to exercise significant, albeit not absolute, control over the trust corpus. First, participation in the Plan is voluntary. Hence, Debtor in fact created and commenced the accumulation of the trust by electing to participate in the Plan. Debtor chose to have a portion of his present income set aside in a kind of interest-bearing savings account, to which

he or his beneficiaries would have certain limited access in the present and complete access upon his retirement, resignation, dismissal, disability or death. Also, Debtor may withdraw all or any portion of his contributions under Pillsbury's prior stock ownership plan and the earnings thereon. Although the consent of the committee is required, this may well be no more than an administrative formality since Section 7.1 does not contain any other prerequisites for this general withdrawal.

The provision in the Plan that is most fatal to the finding of a spendthrift trust is Section 7.2, which permits Debtor, again upon the consent of the committee, to withdraw from his basic contribution account to meet "immediate and heavy financial needs" arising from accident, sickness, disability or other financial emergency affecting the participant or any of his dependents. In addition, Debtor can apply for withdrawals from the same account to provide for his education or the education of his dependents, or to make a "capital investment" in his principal residence. This provision clearly shows that the Plan is more in the nature of a tax-deferred savings account than a spendthrift trust. Although Debtor cannot unilaterally withdraw funds from his account for the above-mentioned purposes, there is no operative provision allowing the committee to deny the withdrawal if Debtor demonstrates that he needs the funds for one or more of the stated purposes. The primary purpose of a spendthrift trust is to protect the trust corpus from the improvident acts of the beneficiary and the overreaching hands of his creditors. If Debtor can draw upon the funds in his trust account to make a "capital investment" (defined in the Plan as payments on the purchase price, or upon a mortgage on the principal residence, or any construction or improvement thereon) or to pay off pressing creditors during a time of financial privation, he could quickly and easily dissipate the trust corpus—the precise result which a spendthrift trust is designed to avoid. Moreover, creditors should be entitled to share in the funds in Debtor's trust account since Debtor, instead of filing for bankruptcy, could have applied for the withdrawal of all the funds in his basic contribution account to relieve his financial hardship. *See, In re Miller,* 33 B.R. 549 (Bankr.D.Minn.1983).

Similarly, under the loan provision in Section 7.4, Debtor may apply for a loan from his investment plan account and his basic contribution account to meet the same "extraordinary expenses" specified under the financial hardship provision, to provide for his or his dependents' education or to make a "capital investment." Although this is only a loan and its issuance is within the "sole discretion" of the committee, it nevertheless affords Debtor a source of funds to draw upon in a perceived emergency, or to meet educational expenses for which any middle-class parent in today's economy should otherwise make long-term plans. As stated above, this access to the trust corpus, though subject to certain minimal restrictions, is inimical to the notion of a traditional spendthrift trust. *See, In re Moulton's Estate.*

Clearly, then, the trust created by the Plan is not a spendthrift trust under Minnesota law because: (1) The settlor is the beneficiary, at least to the extent of the employee-beneficiary's contribution, *In re Werner,* 31 B.R. 418, 421 (Bankr.D.Minn. 1983); (2) The trust is not immune from claims of child support or alimony pursuant to Section 12.8 of the Plan, *In re Loe,* 63 B.R. 259, 261 (Bankr.D.Minn.1986); and (3) The employee-beneficiary exercises significant control over the trust corpus by his initial election to participate in the Plan and his ability to withdraw funds from his account for various purposes, *In re Werner, supra.* Since the failure to satisfy any one of the three requirements is fatal to finding a spendthrift trust, the trust created by the Plan is not a spendthrift trust.

Since the trust created by the Plan does not qualify as a valid spendthrift trust under Minnesota law, it cannot be excluded from property of the estate under 11 U.S.C. § 541(c)(2). Hence, Debtor's interest in the Pillsbury Stock Purchase and Investment Plan is property of the estate as a matter of law, and Plaintiff is entitled to administer it to the extent it is not exempt.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1. That Defendant Martin E. Hansen's motion for summary judgment is denied;

2. That the rights of Defendant Martin E. Hansen in the Pillsbury Company Stock Purchase and Investment Plan accrued by him prior to May 22, 1986, are property of his bankruptcy estate, subject to administration by Plaintiff;

3. That, to the extent that an accounting of and for Defendant Martin E. Hansen's rights in the Pillsbury Company Stock Purchase and Investment Plan as of May 22, 1986, was not provided to Plaintiff during the course of this adversary proceeding, the Trustees of that Plan shall provide such to Plaintiff forthwith;

4. That, after final decision on Plaintiff's objection to Defendant Martin E. Hansen's claim of exemption in his rights in the Pillsbury Company Stock Purchase and Investment Plan, the Trustees of that Plan shall turn over to Plaintiff the amounts held for the benefit of Defendant Martin E. Hansen in that Plan as of May 22, 1986.

LET JUDGMENT BE ENTERED IN ACCORDANCE WITH TERMS 2, 3, AND 4 OF THIS ORDER.