Wayne DREWES, Trustee–Appellant,

v.

Barry SCHONTEICH, Debtor,

Linda Schonteich, Debtor–Appellee.

No. 93–2716.

United States Court of Appeals,
Eighth Circuit.

Submitted May 12, 1994.

Decided Aug. 3, 1994.

Kip M. Kaler, Fargo, ND, argued, for appellant.

Thomas J. Kuchera, Grand Forks, ND, argued, for appellee.

Before MAGILL, Circuit Judge, and FLOYD R. GIBSON and JOHN R. GIBSON, Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge.

Wayne Drewes, the trustee for the bankruptcy estate of Barry and Linda Schonteich, appeals the district court's[1] order affirming the bankruptcy court's[2] denial of his motion to turnover certain monthly payments that Linda was receiving. We affirm.

## I. BACKGROUND

Linda Schonteich served as a live-in companion and caretaker for an elderly man, Joseph Bloom. Bloom named Linda as the beneficiary of several agreements between himself and two charitable institutions, the Mayo Foundation for Medical Education and Research of Minnesota ("Mayo") and the Claremont McKenna College of California ("Claremont"). Under the terms of the agreement with Mayo and the three agreements with Claremont, Bloom gave cash and stock to the charitable institutions, and they agreed to pay Linda $291.00 and $1083.32 per month, respectively. These monthly payments were expressly nonassignable and terminated at Linda's death. Several years after the agreements were formed, Linda and her husband filed for bankruptcy. The bankruptcy trustee ("Drewes") demanded that Linda turn over to the bankruptcy estate all post-petition and future payments;

Linda claimed that the payments were excluded under 11 U.S.C. § 541(c)(2).[3]

Utilizing California and Minnesota law,[4] the bankruptcy court determined that the payments were excludable under state law spendthrift trust provisions. The bankruptcy court found that although the agreements were not specifically described as spendthrift trusts, the payments were nonassignable and Linda could not alienate her interest. The district court affirmed the bankruptcy court's decision. On appeal, Drewes argues that Bloom's agreements with Mayo and Claremont are not trusts and that alternatively, if they are trusts, they are not spendthrift trusts.

## II. DISCUSSION

■ The bankruptcy estate generally consists of all of the debtor's legal and equitable interests at the time the bankruptcy petition is filed, 11 U.S.C. § 541(a)(1) (1988); however, a debtor's interest in a trust is excluded from the estate if it is restricted from transfer under applicable nonbankruptcy law. *Id.* at § 541(c)(2).[5] We can look to state and federal nonbankruptcy law in determining whether property is excludable under § 541(c)(2). *Patterson v. Shumate*, —— U.S. ——, —— ————, 112 S.Ct. 2242, 2246–47, 119 L.Ed.2d 519 (1992).

■ We begin by acknowledging that "[t]he cardinal purpose of construing a … trust is to ascertain the intention of the … settlor." *In re Moulton's Estate*, 233 Minn. 286, 46 N.W.2d 667, 669 (1951) (citation omitted); *see also In re Edwards' Estate*, 217 Cal. 25, 17 P.2d 116, 117 (1932) (recognizing the testator's intention to create a spendthrift trust). Thus, the first step in this

---

1. The Honorable Rodney S. Webb, Chief Judge, United States District Court for the District of North Dakota.

2. The Honorable William A. Hill, United States Bankruptcy Judge for the District of North Dakota.

3. "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2) (1988).

4. Neither party disputes the bankruptcy court's use of California and Minnesota law, the situs of the trust funds, in analyzing whether these agreements are excludable under the applicable nonbankruptcy law.

5. Because these payments are inter vivos transfers, and not acquired by bequest, devise, inheritance, property settlement, divorce decree, or beneficial interest in a life insurance policy or death benefit plan, the 180-day provision of 11 U.S.C. § 541(a)(5)(A–C) does not apply.

inquiry is to determine whether Bloom intended to create a trust and, specifically, to create a spendthrift trust. The bankruptcy court's determination of Bloom's intent is a question of fact, which we review under the clearly erroneous standard. *In re Newman*, 875 F.2d 668, 670 (8th Cir.1989). The second step is to determine whether Bloom complied with the pertinent states' requirements for the formation of spendthrift trusts; we review the bankruptcy court's legal conclusions de novo. *Id.*

### A. Bloom's Formation of Trusts

Drewes contends that the agreements Bloom entered into with Mayo and Claremont are not trusts; rather, they are contracts to provide annuity payments to a third-party. He argues that Bloom's arrangements here are analogous to his purchase of an annuity policy from an insurance company as a gift to Linda. In support of his position, Drewes points out that the documents are entitled "gift annuity agreements" and that the word "trust" does not appear in any of the agreements.

Despite Drewes' arguments to the contrary, "[n]o particular form of words is necessary if the intention to create a trust satisfactorily appears ... the words 'trust' and 'trustee' need not be used." *Bingen v. First Trust Co. of St. Paul*, 103 F.2d 260, 263 (8th Cir.1939). Under Minnesota common law, the essentials of a trust relationship are a designated trustee, a designated beneficiary, and a definite trust res. *In re Bush's Trust*, 249 Minn. 36, 81 N.W.2d 615, 620 (1957). In order to create an express trust under California law, the following elements must be present: trust intent; trust property; trust purpose; and a beneficiary. Cal. Prob.Code §§ 15201–205 (Deering 1991); *Estate of Heggstad*, 16 Cal.App.4th 943, 20 Cal. Rptr.2d 433, 435 (1993).

The bankruptcy court determined, and the district court agreed, that all the elements of a trust are present in this case. Regardless of whether Bloom desired to bestow a gift on Linda or to confer some form of support, Bloom possessed the requisite trust intent in that he intended for Linda to benefit for her lifetime from the funds he gave to Mayo and Claremont. The money and stock constitute trust property that is being held by Mayo and Claremont as fiduciaries, and Linda is clearly the beneficiary. We conclude that the bankruptcy court did not err in finding that Bloom created a series of trusts for Linda's benefit.

Linda's interests in these trusts are excluded from the bankruptcy estate only if they are subject to restrictions on transfer that are enforceable under the relevant nonbankruptcy law. 11 U.S.C. § 541(c)(2); *Patterson*, —— U.S. at ——, 112 S.Ct. at 2246. Thus, the nonassignment clauses in these agreements must also be analyzed under the applicable Minnesota and California law.

### B. The Minnesota Agreement

Spendthrift trusts, which are exempt from claims of the donee's creditors, are clearly enforceable under Minnesota law. *See In re Trust Created under Agreement with McLauglin*, 361 N.W.2d 43, 45 (Minn. 1985) ("This court has long recognized the validity of spendthrift provisions and has acknowledged that donors may dispose of their property as they see fit, including exempting their gifts from the claims of donees' creditors."). In order to create a spendthrift trust, "[n]o particular form of words is necessary," *Moulton's Estate*, 46 N.W.2d at 670; it is enough that the settlor manifest an intent to restrain alienation. *Id.* If the right to transfer is completely restrained, then the donee's interest may not be reached by her creditors. *Id.* at 671. Although Minnesota law does not explicitly discuss the other requirements for a spendthrift trust, the Minnesota Supreme Court's discussion in *Moulton's Estate* contemplated that the settlor of a spendthrift trust cannot be the beneficiary and that the beneficiary cannot have control or dominion over the corpus. *See id.* at 670–71; *In re Swanson*, 873 F.2d 1121, 1123 (8th Cir.1989) (interpreting Minnesota law).

Bloom's agreement with Mayo provided that the payments to Linda were nonassignable. Because the bankruptcy court found no indication that Linda contributed any money to the trust funds or that she had

any control over the corpus, this agreement complies with Minnesota law regarding the formation of a spendthrift trust. We hold that the bankruptcy court did not err in concluding that the Mayo payments were excludable from the bankruptcy estate.

## C. The California Agreements

■ Under California law, the settlor of a trust may also restrict the transfer of a beneficiary's income. Cal.Prob.Code § 15300 (Deering 1991); *see also In re Neuton,* 922 F.2d 1379, 1383 (9th Cir.1990). "A spendthrift trust is the term commonly used to designate a trust created to provide a fund for the maintenance of the beneficiary and at the same time to secure the trust against the beneficiary's improvidence or incapacity." *Id.* at n. 4 (quotation omitted). Like the Mayo agreement, Bloom's agreements with Claremont provided that the payments were nonassignable; we agree with the bankruptcy court's conclusion that the Claremont agreements comply with California spendthrift trust law.[6]

## III. CONCLUSION

Having reviewed the applicable nonbankruptcy law, we conclude that the bankruptcy court did not err in determining the agreements between Bloom and the two charitable institutions are spendthrift trusts. As such, Linda's monthly payments are not part of the bankruptcy estate under § 541, and the district court correctly upheld the bankruptcy court's denial of Drewes' turnover motion.

---

**6.** The trustee argues that if these agreements are spendthrift trusts under California law, then by statute, 25% of the payments should be considered an asset of the bankruptcy estate. Cal.Prob. Code § 15306.5 (Deering 1991). Because the trustee failed to raise this issue in the courts below, we need not consider this argument on appeal. *Nolte v. Pearson,* 994 F.2d 1311, 1315 (8th Cir.1993).