# FIRST NATIONAL BANK OF CANBY v. MINDA OLUFSON AND OTHERS.[1]

October 3, 1930.

No. 27,953.

*Johnson & Hoel,* for appellant.

*A. C. Severson,* for respondents.

OLSEN, C.

Appeal by plaintiff from an order sustaining a demurrer to the complaint.

Plaintiff is a judgment creditor of the defendant Minda Olufson. Execution on the judgment has been returned unsatisfied. By this action the plaintiff seeks to have the final decree of the probate court in the matter of the estate of Thrond Syverson, the father of Minda, construed and to have it decreed that all right and interest of Minda in said estate be sold by a trustee or receiver, to be appointed by the court for that purpose, and to have the proceeds of the sale applied in satisfaction of plaintiff's judgment. The trial court sustained a general demurrer to plaintiff's complaint.

[1] Reported in 232 N. W. 337.

Thrond Syverson died testate on December 28, 1927. After payment of debts, expenses, and certain specific legacies, his will devised and bequeathed the residue of his estate as follows:

"An undivided one-third part thereof and interest therein to Sina Kopperud.

"An undivided one-third part thereof and interest therein to Arna Kopperud.

"An undivided one-third part thereof and interest therein to Christian Kopperud, in trust for Minda Olufson, for the following uses and purposes: a. Said trusteeship shall continue as long as John Olufson lives or as long as he is the husband of said Minda Olufson. b. Said trustee shall annually pay to said Minda Olufson the net income from her share. c. Said trustee shall hold and manage said share and property as a trust fund, and shall have full authority and is hereby empowered to sell land, mortgage land, reinvest, and do any and all things with reference to said property in his hands as such trustee as he shall consider to be for the best interests of said trust and said Minda Olufson. Said trusteeship shall terminate in the event that said Minda Olufson dies before John Olufson and while his wife."

The estate was duly probated, and by final decree of the probate court entered on January 28, 1929, the residue of the estate, consisting of both real and personal property, was distributed and decreed in exact conformity with the quoted provisions of the will.

The question presented by the appeal is whether the plaintiff can reach at this time either the property or the income therefrom devised by the will and decreed by the probate court to Christian Kopperud in trust. The final decree of the probate court has not been appealed from and is conclusive here. But the construction of that decree and what title and interest in the property vested thereby may no doubt be determined by the courts.

The trust created by the will and confirmed by the decree was a valid trust under our statutes, G. S. 1923 (2 Mason, 1927) § 8090 (3, 5). By its terms Minda Olufson is to receive the income of the trust property for life. The trust is to terminate on her

death. It is true that in certain contingencies it may terminate prior to her death, but in any event the trust cannot continue beyond her death. In effect it is a trust whereby she is to receive the income from the trust property during her lifetime. While not a spendthrift trust, it is clear that the purpose of the donor was to secure to his daughter Minda the sole use and benefit of the income from the property and to protect the income and the property from the control of and acquisition by others, especially to protect same from her husband. There is no provision in the instrument creating the trust for the transfer or passing of any title to the trust property to her. All she is expressly given is the income therefrom. To hold that creditors or others may now come in and take away the income or the property will destroy the trust and defeat the clear purpose of the donor. He says that this income is to be paid by the trustee to his daughter. We are asked to say that the income shall be diverted and paid to her creditors.

The English rule that creditors can reach the income of such a trust is a branch of the English common law investing creditors with most extraordinary rights against debtors. It is in line with the old English law permitting the creditor to impose practically life imprisonment on the debtor for failure to pay. While the English rule as to creditors' rights to reach the income from trust property has been followed in a few states, it has been departed from in the majority of the states and repudiated by the Supreme Court of the United States.

The question is considered in Nichols v. Eaton, 91 U. S. 716, 23 L. ed. 254; Hyde v. Woods, 94 U. S. 523, 24 L. ed. 264; Spindle v. Shreve, 111 U. S. 542, 4 S. Ct. 522, 28 L. ed. 512; and Shelton v. King, 229 U. S. 90, 33 S. Ct. 686, 688, 57 L. ed. 1086. In the Nichols case it is said [91 U. S. 725]:

"But, while we have thus attempted to show that Mrs. Eaton's will is valid in all its parts upon the extremest doctrine of the English Chancery Court, we do not wish to have it understood that we accept the limitations which that court has placed upon the power of testamentary disposition of property by its owner. We

do not see, as implied in the remark of Lord Eldon, that the power of alienation is a necessary incident to a life estate in real property, or that the rents and profits of real property and the interests and dividends of personal property may not be enjoyed by an individual without liability for his debts being attached as a necessary incident to such enjoyment. This doctrine is one which the English Chancery Court has ingrafted upon the common law for the benefit of creditors, and is comparatively of modern origin. We concede that there are limitations which public policy or general statutes impose upon all dispositions of property, such as those designed to prevent perpetuities and accumulations of real estate in corporations and ecclesiastical bodies. We also admit that there is a just and sound policy peculiarly appropriate to the jurisdiction of courts of equity to protect creditors against frauds upon their rights, whether they be actual frauds or constructive frauds. But the doctrine that the owner of property, in the free exercise of his will in disposing of it cannot so dispose of it, but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due his creditors, though that may soon deprive him of all the benefits sought to be conferred by the testator's affection or generosity, is one which we are not prepared to announce as the doctrine of this court.

"If the doctrine is to be sustained at all, it must rest exclusively on the rights of creditors. Whatever may be the extent of those rights in England, the policy of the States of this Union, as expressed both by their statutes and the decisions of their courts, has not been carried so far in that direction. * * *

"Nor do we see any reason, in the recognized nature and tenure of property and its transfer by will, why a testator who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, or uninterrupted benefit of the gift, during the life of the donee. Why a parent or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune and even

his own improvidence or incapacity for self-protection, should not be permitted to do so, is not readily perceived." A number of state decisions are cited and analyzed.

In the Shelton case [229 U. S. 96] the court said:

"The doctrine thus stated [the English rule] is the plain outgrowth of certain earlier English decisions in the interest of creditors, which hold, in substance, that the necessary incidents of beneficial ownership in property are liability to creditors and the power of alienation. . Having concluded that a testator could not so bestow that which was his own to an object of his bounty as not to be subject to the claims of creditors of the latter, it was a logical conclusion that a testator could not postpone the payment of a vested and absolute legacy beyond the time when the legatee should be able to give a valid discharge. * * * The foundation of the English doctrine in both classes of cases is an assumption that there is some settled principle of public policy which subjects all property in which one has a beneficial ownership to the claims of creditors and forbids restraint upon alienation. That this theory of public policy is not of universal application, at least in this country, is manifest from the numerous exemption statutes existing which protect to a limited extent the acquisitions of a debtor from the claims of his creditors and restrain his power of alienation in the interest of his family. Neither do we for a moment question the rule that one may not by his own act preserve to himself the enjoyment of property in such manner that it shall not be subject to the claims of creditors or placed beyond his own power of alienation.

"But a very different question is presented when we come to the powers of a testator to so bestow that which is absolutely his own as to secure its beneficial enjoyment by an object of his bounty without being subject to the claims of assignees or creditors. This court, and the courts of a number of the states of the Union, have not accepted the limitation which the English courts have placed upon the right of testamentary disposition, and have sustained trusts having as an object the application of a testator's bequest

to the support and maintenance of the recipient of his bounty. They have, therefore, rejected the assumption that liability to creditors and freedom of alienation are necessary incidents to the right to enjoy the rents and profits of real estate, or the income from other property." Nichols v. Eaton, 91 U. S. 716, 23 L. ed. 254, is quoted from and approved. Later state cases are cited.

We conclude that during the existence of this trust a creditor of Minda Olufson cannot reach either the trust property or the income therefrom. After the income comes into the hands of Minda it then of course becomes part of her general estate and subject in like manner as her other property to claims of creditors.

·The order appealed from is affirmed.