Michael A. MORRISON,
et al., Respondents,

v.

William DOYLE, Sr., et al., Appellants.

No. C4–97–558.

Court of Appeals of Minnesota.

Nov. 18, 1997.

Review Granted Jan. 22, 1998.

694

Gary D. Pihlstrom, Hatch, Eiden & Pihlstrom, Minneapolis, for Respondents.

Jan Stuurmans, Law Office of Jan Stuurmans, P.A., Minneapolis, for Appellants.

Considered and decided by SCHUMACHER, P.J., and NORTON and WILLIS, JJ.

## OPINION

WILLIS, Judge.

Appellants are William Doyle, Sr. (Doyle), his children, his wife, the estate of Lois Doyle, and the Lois P. Doyle trust (the LPD trust). Appellants contend that the district court erred in finding that the LPD trust is not a spendthrift trust; in issuing an order of attachment of assets of the estate of Veronica Doyle, the estate of Lois Doyle, and the LPD trust; and in temporarily restraining Doyle, his children, and his wife from transferring property to or from the estate of Lois Doyle, the LPD trust, each other, or any other person if Doyle, the estate of Lois Doyle, or the LPD trust ever held an interest in the property. We affirm.

## FACTS

Veronica Doyle disinherited her son, Doyle, in her will, which was executed on March 18, 1976. But the will provided that one-sixth of her estate would pass to Lois Doyle, Doyle's wife, if she was still married to Doyle at the time of Veronica's death.

Doyle executed a promissory note to respondents Michael and Thomas Morrison on April 27, 1977, reflecting a $30,000 loan from the Morrisons to Holly Midwest, Inc., and its two stockholders, Doyle and his brother. As security for the loan, Doyle also executed collateral assignments of $40,000 in life insurance proceeds, a security interest in two drums of gold concentrate, and a security interest in a contract allegedly worth $625,-000 in commissions. The payors defaulted on the promissory note, and the Morrisons found that the life insurance was worthless and the drums and the commissions contract did not exist. The Morrisons obtained a $40,000 judgment against Doyle and his co-obligors on the note on October 28, 1982, and they subsequently renewed their judgment against Doyle, effective March 9, 1993.

Lois Doyle executed a trust agreement (the LPD trust) on January 5, 1988, naming herself sole trustee and making her husband, Doyle, the primary beneficiary. Lois Doyle drafted her will so that any monies flowing from her estate would bypass Doyle and be paid directly to the trust. The trust gives discretionary power to the trustee to pay trust income and principal to Doyle for his education, support, health, and maintenance. If Doyle dies before final distribution of the principal and income, the trust provides that

Lois Doyle's children will receive equal shares of the trust remainder. The LPD trust also gives the trustee the right to terminate the trust early and pay over any remaining interest and principal to Doyle if the trustee determines that the trust is uneconomical, and the trust designates Doyle as attorney-in-fact "[f]or purposes of [the] Trust." Veronica Doyle died on February 12, 1988, and one-sixth of her estate duly passed to Lois Doyle. When Lois Doyle died three months later, the district court admitted her will to probate and ordered her entire estate to pass to the LPD trust.

The LPD trust does not provide for a successor trustee. But upon Lois Doyle's death, Doyle assumed the role of trustee and seventeen months later petitioned, as attorney-in-fact, to have himself appointed successor trustee. On November 3, 1989, the district court appointed Doyle sole trustee of the LPD trust retroactively to the date of Lois Doyle's death.

After revival of the judgment against him, Doyle transferred thousands of dollars from the LPD trust and money intended for the LPD trust from Veronica Doyle's estate to his children, to his new wife, to his brother, and to his personal checking account. During depositions of Doyle and his children, Doyle denied that he had any checking or savings accounts, when he in fact had a personal checking account into which he deposited money from the LPD trust for his personal use. Doyle's children repeatedly denied that Doyle had transferred money to them, although Doyle admitted to transferring money intended for the LPD trust to his son to pay Doyle's bills, claiming the transfers were necessary because Doyle did not have his own checking account.

Upon the Morrisons' application for an order of attachment and motion for temporary restraining order, the district court found that the LPD trust is not a spendthrift trust and is, therefore, subject to attachment by Doyle's creditors. The court further found that because the claim on which the Morrisons obtained judgment against Doyle was based on Doyle's fraud, the Morrisons met their burden of proving a ground for attachment. The court issued an order of attach-

ment against property distributable to any appellant from the estate of Veronica Doyle, the estate of Lois Doyle, and the LPD trust and against a parcel of real property. The court also restrained Doyle, his children, and his wife from transferring property to or from the trust, the estate of Lois Doyle, each other, or any other person if Doyle, the LPD trust, or the estate of Lois Doyle ever held an interest in the property. The court reasoned that

> [t]he harm inflicted upon the [Morrisons], should Doyle be allowed to freely transfer funds out of the [LPD Trust], will be greater than the harm Doyle may suffer if the assets are temporarily frozen.

## ISSUES

1. Did the district court err in concluding that the LPD trust is not a spendthrift trust?

2. Did the district court err in issuing an order for attachment against the estate of Veronica Doyle, the estate of Lois Doyle, and the LPD trust?

3. Did the district court err in issuing an order temporarily restraining Doyle, his children, and his wife from transferring property to or from the trust, the estate of Lois Doyle, each other, or any other person if Doyle, the LPD trust, or the estate of Lois Doyle ever held an interest in the property?

## ANALYSIS

**1. Spendthrift Trust**

Appellants argue that the district court erred in finding that the LPD trust is not a spendthrift trust. When a district court has interpreted an unambiguous written trust document, a reviewing court is not bound by and need not give deference to the district court's decision. *In re Trust Created by Hill ex rel. Maud Hill Schroll*, 499 N.W.2d 475, 482 (Minn.App.1993), *review denied* (Minn. July 15, 1993). A spendthrift trust is one where the grantor has restrained the beneficiary's power to alienate trust property before distribution to him. *In re Moulton's Estate*, 233 Minn. 286, 290, 46 N.W.2d 667, 670 (1951). Although provisions restraining alienation by the beneficiary or

placing the benefits of a trust beyond the reach of creditors are often expressed in the trust instrument itself, specific language is not necessary to create a spendthrift trust. *Id.* at 291, 46 N.W.2d at 670. A court may infer a grantor's intent to restrain alienation from the instrument when read as a whole. *Id.* at 291–92, 46 N.W.2d at 670. The assets of a spendthrift trust are exempt from attachment, garnishment, or execution to pay the debts of a beneficiary. *Smith v. Smith,* 312 Minn. 541, 545, 253 N.W.2d 143, 145 (1977).

■ In construing a trust, a court must first determine the grantor's intent. *In re McLaughlin,* 361 N.W.2d 43, 44 (Minn.1985). In *McLaughlin,* the Minnesota Supreme Court stated that

[w]here the language of the trust instrument is not ambiguous, the intent of the settlor must be ascertained from the four corners of the agreement, without resort to extrinsic evidence of intent.

*Id.* at 44–45. The court, however, must not read into a trust instrument provisions that do not expressly or impliedly appear from the plain meaning of its words. *In re McCann's Will,* 212 Minn. 233, 240, 3 N.W.2d 226, 230 (1942). If the trust imposes a valid restraint on the voluntary and involuntary transfer of a beneficiary's interest, it is a spendthrift trust. Restatement (Second) of Trusts § 152(2) (1959); *see also Moulton,* 233 Minn. at 290, 46 N.W.2d. at 670. But if the beneficiary is entitled to receive the principal of the trust immediately, a restraint on the voluntary or involuntary transfer of the beneficiary's interest in the principal is invalid. Restatement (Second) of Trusts § 153(2) (1959); *cf. First Nat'l Bank of Canby v. Olufson,* 181 Minn. 289, 291, 232 N.W. 337, 338 (1930) (holding that where beneficiary was not entitled to receive principal, creditors could make no claim for transfer of beneficiary's interest in principal).[1]

■ A court may find an implied spendthrift trust where there is no provision in the trust instrument for transferring to the beneficiary title to the trust property, even though the beneficiary has a right to receive income from the trust. *See id.* at 291, 232 N.W. at 338 (holding that even though grantor created trust without spendthrift provision, where purpose of trust was to provide beneficiary sole use and benefit of trust income, income was beyond reach of "others"). But not every trust that pays a beneficiary income is a spendthrift trust. *Moulton,* 233 Minn. at 296–98, 46 N.W.2d at 673. The grantor must show a specific intent to prevent the beneficiary from alienating his interest in the trust before distribution and to provide that it may not be subject to creditors' demands. *Id.* at 297–98, 46 N.W.2d at 673.

■ The LPD trust contains no express provisions creating a spendthrift trust. Like the trust instrument in *Moulton,* the LPD trust limits the money that Doyle, as primary beneficiary, may receive to that needed for his education, support, health, and maintenance. Unlike the *Moulton* trust, however, Doyle is entitled, in his sole discretion, not only to the income of the trust, but also to those portions of the principal that the trustee determines are necessary to provide the intended support. Doyle, as trustee, therefore has the discretion to distribute both the income and the principal of the trust to himself as he sees fit. Further, as in *Moulton,* the LPD trust has named beneficiaries who will receive the remainder of the estate if Doyle dies before distributing all of the trust assets. But, unlike *Moulton,* the remainder interests in the LPD trust are subject to complete divestment because Doyle has the power to distribute all the trust assets to himself or, alternatively, to terminate the trust early and distribute the remaining trust interest and principal to himself. The LPD

---

1. Critics have found inconsistent the Minnesota Supreme Court's holding that the trust in *Olufson* was not a spendthrift trust, "followed by the application to it of the incident of inalienability generally attributable only to spendthrift trusts, absent statutory provisions." *Moulton,* 233 Minn. at 296, 46 N.W.2d at 672. But the court in *Moulton* clarified the holding:

the trust [in *Olufson* ] was not expressly declared to be a spendthrift trust, but * * * the intention of the testator to provide an income for his daughter was clearly apparent from the instrument, and from that the restraint on alienation common to spendthrift trusts would be implied.
*Id.*

trust is, therefore, not an implied spendthrift trust because Doyle, as trustee, can distribute the entire principal to himself, as beneficiary, at any time, in his sole discretion.

▮ Appellants argue that this court should consider extrinsic evidence of Lois Doyle's intent to create a spendthrift trust. But the language of the LPD trust is unambiguous and none of the parties claims otherwise. Therefore, we will not resort to extrinsic evidence of intent. *McLaughlin,* 361 N.W.2d at 44–45. Even if we were to consider Lois Doyle's intent and conclude that she intended to restrain alienation of Doyle's interest, because the trust provides that the beneficiary is entitled immediately to the principal as well as the income of the trust, it is not a spendthrift trust. Restatement (Second) of Trusts § 153(2); *see also Olufson,* 181 Minn. at 291, 232 N.W. at 338.

▮ Appellants also argue that the district court incorrectly relied on the statutory management powers of trustees to find that Doyle had the unlimited authority to distribute trust income and principal. The powers of a trustee are enumerated in Minn. Stat. § 501B.81 (1996) and include the power to sell, convey, purchase, or exchange trust assets, to borrow or mortgage trust assets, and to resolve claims against the trust. Minn.Stat. § 501B.81, subds. 7, 19, 21, 28. The existence of a trustee's statutory powers alone will not invalidate a spendthrift trust. But the district court's reliance on these powers is harmless error because the court also relied, properly, on Doyle's right under the terms of the trust, as sole trustee, to distribute the income and the principal of the trust to himself and his unilateral right to terminate the trust at his discretion, paying over the remaining trust assets to himself. We therefore conclude that the district court did not err in finding that the LPD trust is not a spendthrift trust.

## 2. Attachment of Assets

▮ Where a district court weighs statutory criteria in light of found basic facts, the appellate court may correct erroneous applications of the law. As to the trial court's conclusions on the ultimate issues,

mindful of the discretion accorded the trial court in the exercise of its equitable jurisdiction, the reviewing court reviews under an abuse of discretion standard.

*Maxfield v. Maxfield,* 452 N.W.2d 219, 221 (Minn.1990), *review denied* (Minn. Mar. 15, 1990). Generally, the interest of a beneficiary in a trust is assignable, and creditors may reach that interest. *Moulton,* 233 Minn. at 293, 46 N.W.2d at 671. The interest is attachable in the absence of statutory provisions or provisions in a trust instrument providing otherwise. *Id.* A spendthrift trust is not attachable. *Smith,* 312 Minn. at 545, 253 N.W.2d at 145.

### a. Minn.Stat. § 570.02

▮ Appellants assert that the district court erred in concluding that the Morrisons met their burden of proving the prerequisites to attachment required by Minn. Stat. § 570.02 (1996). A court may issue an order of attachment to provide security for satisfaction of a judgment in, among others, the following situations:

(1) when the respondent has assigned, secreted, or disposed of, or is about to assign, secret or dispose of, any of the respondent's nonexempt property, with intent to delay or defraud the respondent's creditors;

* * * *

(4) when the respondent has committed an intentional fraud giving rise to the claim upon which the civil action is brought[.]

Minn.Stat. § 570.02. A respondent is "a party against whom an order of attachment is requested." Minn.Stat. § 570.011, subd. 3 (1996). The district court correctly held that all appellants are "respondents" under this statute because the Morrisons sought an order for attachment against all of them. The Morrisons, however, are creditors only with respect to Doyle. Because Minn.Stat. § 570.02, subd. 1(1), allows for attachment only of the assets of a respondent who is attempting to evade a creditor, there is a basis for attachment only with respect to Doyle.

■ The district court found in its order of attachment [2] that Doyle "assigned, secreted and disposed of non-exempt property with intent to delay and defraud his creditors, the [Morrisons]." This court will reverse a district court's findings of fact only if, upon review of the entire evidence, it is "left with the definite and firm conviction that a mistake has been made." *Gjovik v. Strope,* 401 N.W.2d 664, 667 (Minn.1987). There is ample record evidence to support the district court's finding, including Doyle's transfers of money intended for, and money from, the LPD trust to his family members and to his personal checking account and Doyle's admissions to such transfers. Therefore, the district court did not abuse its discretion when it found that it could attach the assets of the estate of Veronica Doyle, the estate of Lois Doyle, and the LPD trust under Minn. Stat. § 570.02, subd. 1(1).

■ The district court also found that Doyle had committed an intentional fraud against the Morrisons, providing the basis for issuance of an order of attachment against the assets of the estate of Veronica Doyle, the estate of Lois Doyle, and the LPD trust under Minn.Stat. § 570.02, subd. 1(4). The court stated that

> [t]he underlying claim which was the basis for [the Morrisons'] judgment against Doyle sounded in contract, but was premised on Doyle's having committed an intentional fraud against the [Morrisons].

Because this is a question of law, we are not bound by the district court's decision. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn. 1984). A court generally should not convert a contract claim into a tort claim. *Hanks v. Hubbard Broadcasting, Inc.,* 493 N.W.2d 302, 307 (Minn.App.1992), *review denied* (Minn. Feb. 12, 1993). But here the district court did not impermissibly convert the Morrisons' claim. The Minnesota Supreme Court has stated that

> when a plaintiff seeks to recover damages for an alleged breach of contract he is limited to damages flowing only from such breach *except in exceptional cases where*

*the defendant's breach of contract constitutes or is accompanied by an independent tort.*

*Wild v. Rarig,* 302 Minn. 419, 440, 234 N.W.2d 775, 789 (1975) (emphasis added). A fair reading of the underlying complaint here shows that the Morrisons allege that Doyle's misrepresentations induced them to enter into a contract with Doyle and his co-obligors. "An action to recover damages for fraud inducing the making of a contract is not based on the contract but on tort." *Engen v. Merchants & Mfrs. State Bank,* 164 Minn. 293, 298, 204 N.W. 963, 965 (1925). Because the cause of action on which the Morrisons received judgment was based on Doyle's intentional tort of fraudulently inducing the Morrisons to enter into a contract, the district court did not err in finding that the Morrisons could attach the assets of the estate of Veronica Doyle, the estate of Lois Doyle, and the LPD trust, under Minn.Stat. § 570.02, subd. 1(4).

■ Respondents contend that because all other appellants allegedly assisted Doyle in hiding and lying about his assets, they all committed an intentional fraud and their assets are subject to attachment under Minn. Stat. § 570.02, subd. 1(4). But the complaint on which the Morrisons received their judgment was not based on other appellants' fraudulent activities. The district court correctly held that only Doyle's fraudulent conduct gave rise to the attachment claim under Minn.Stat. § 570.02, subd. 1(4).

■ Appellants argue that the district court incorrectly attached the assets of the LPD trust because it was not a "respondent" within the meaning of Minn.Stat. § 570.011. An order for attachment shall

> direct the sheriff of the county in which the court is located or of any other county to seize and safely keep all nonexempt property of the respondent or such specific property as the court may specify, or so much as is necessary to satisfy the amount claimed with expenses and costs using the full force of the county.

---

**2.** The district court incorporated these findings in its February 12, 1997, order by reference to its

September 20, 1996, preliminary order of attachment.

Minn.Stat. § 570.051(4) (1996). Whether the LPD trust is a "respondent" within the meaning of Minn.Stat. § 570.011 is irrelevant because the Morrisons meet the requirements for attachment under § 570.02, subd. 1(1) or (4), and the court may therefore attach any of Doyle's assets, including those flowing into or out of the LPD trust. The district court did not err in issuing an order attaching the assets of the LPD trust to provide security for satisfaction of the Morrisons' judgment against Doyle.

**b. Uniform Fraudulent Transfer Act**

■ Appellants argue that the district court erred in issuing an order attaching the assets of the LPD trust and the estate of Veronica Doyle pursuant to the fraudulent transfer act. The act provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor[.]

Minn.Stat. § 513.44 (1996). In an action for relief against a transfer, a creditor may obtain "an attachment or other provisional remedy against the asset transferred or other property of the transferee[.]" Minn.Stat. § 513.47(a)(2) (1996). A "creditor" is a person who has a claim, and a "debtor" is a person who is liable on a claim. Minn.Stat. § 513.41(4), (6) (1996). A "claim" is a

right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

Minn.Stat. § 513.41(3) (1996). The Morrisons have a claim against Doyle, thereby making Doyle a debtor and the Morrisons his creditors under the statute.

■ To be entitled to an order attaching Doyle's assets under the fraudulent transfer act, the Morrisons must show that Doyle intended to defraud them. Minn.Stat. § 513.44(a)(1). Similarly, if any transferees took property as part of a fraudulent transaction, the Morrisons must show that they did not take in good faith. Minn.Stat. § 513.48(b). The district court determined Doyle's "actual intent" under Minn.Stat. § 513.44(b) by considering whether: (1) Doyle's transfers were to an insider; (2) Doyle retained possession or control of the property transferred after the transfer; (3) Doyle disclosed or concealed the transfer; (4) before Doyle made the transfer, he had been sued or threatened with suit; (5) the transfer was of substantially all Doyle's assets; (6) Doyle removed or concealed assets; and (7) Doyle was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred. The findings on which the court based its conclusion that Doyle intended to transfer assets fraudulently are supported by substantial evidence and are not clearly erroneous. The court, therefore, did not err in concluding that it could issue an order for attachment based on the fraudulent transfer act.

The Morrisons contend that the district court erred in holding that Doyle is the only "debtor" pursuant to Minn.Stat. § 513.41. Minn. R. Civ. P. 106 bars respondents from presenting issues not raised in a notice of review. Because the Morrisons did not raise this issue in a notice of review, it is not properly before the court. *See Arndt v. American Family Ins. Co.*, 394 N.W.2d 791, 793 (Minn.1986).

**3. Temporary Injunction Against Transfer of Assets**

■ Appellants contend that the district court improperly issued a temporary injunction barring Doyle, his children, and his wife from transferring property to or from the trust, the estate of Lois Doyle, each other, or any other person if Doyle, the LPD trust, or the estate of Lois Doyle ever held an interest in the property. A creditor may obtain "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred *or of other property* " when the requirements of the fraudulent transfer act are met. Minn.Stat. § 513.47(a)(3)(i) (emphasis added). Appellants argue correctly that appellants other than Doyle, including the estate of Veronica Doyle, the estate of Lois Doyle, and the LPD trust, are not

"debtors" under the fraudulent transfer act. But because the court found that Doyle violated the act by making fraudulent transfers, the court had authority to enjoin further transfers of the assets of the estate of Veronica Doyle, the estate of Lois Doyle, and the LPD trust. The fact that some of the transfers made by Doyle may not have been fraudulent is relevant only to the amount that the Morrisons can collect from transferees.

▬▬▬ The district court also correctly noted that a court may enjoin the transfer of assets if to do so would be fair and equitable. *See* Minn. R. Civ. P. 64. Under rule 64, when a party obtains a judgment, the party may

> provisionally enforce any available remedy at the commencement of an action or at any time during the course of an action to secure any judgment ultimately entered.

2A David F. Herr & Roger S. Haydock, *Minnesota Practice* § 64.3 (1985). But a court can only enforce such remedies when "property presently in the state may not be available at the time of the enforcement of the judgment." *Id.* The district court found that Doyle would likely continue to make his assets unavailable, especially after the Morrisons initiated attachment proceedings. The court further found that the harm Doyle would suffer if the court temporarily "froze" his assets would be less that the harm the Morrisons would suffer if Doyle were allowed to transfer his assets freely. We conclude that the district court did not abuse its discretion in temporarily enjoining the transfer of certain of appellants' assets.

## DECISION

The district court correctly found that the LPD trust is not a spendthrift trust because William Doyle, Sr., is entitled immediately to both the income and the principal of the trust. Furthermore, Doyle, as sole trustee, has complete discretion to alienate the trust income and principal at any time. The court properly issued an order for attachment of the assets of the estate of Veronica Doyle, the estate of Lois Doyle, and the LPD trust as security for satisfaction of the Morrisons' judgment against Doyle because the require-

ments of Minn.Stat. § 570.02 and the fraudulent transfer act were met. In addition, the court properly issued an order temporarily restraining appellants from transferring any real or personal property to or from the estate of Veronica Doyle, the estate of Lois Doyle, and the LPD trust because the requirements of the fraudulent transfer act were met.

**Affirmed.**