Michael A. **MORRISON,**
**et al., Respondents,**

v.

**William DOYLE, Sr., et al.,**
**petitioners, Appellants.**

No. C4–97–558.

Supreme Court of Minnesota.

July 30, 1998.

Law Offices of Jan Stuurmans, P.A., Jan Stuurmans, Minneapolis, for appellants.

Hatch, Eiden & Pihlstrom, Gary D. Pihlstrom, Minneapolis, for respondents.

Dorsey & Whitney LLP, William J. Berens, Melinda K. Greer, Nicholas A.J. Vliestra, Faegre & Benson LLP, Bonnie M. Fleming, Bruce Jones, Minneapolis, for amicus curiae Probate and Trust Law Section of Minnesota State Bar Ass'n.

## OPINION

GARDEBRING, Justice.

We are asked to determine whether the trust at issue in this case is a "spendthrift trust." If so, the assets of the trust are protected from attachment by the primary beneficiary's judgment creditors; if not, the creditors, whose judgment against the primary beneficiary William Doyle (appellant) arises from a business deal, are entitled to attach the assets in the trust, as the trial court and court of appeals have held. We reverse the court of appeals, holding that the settlor's intent in creating the trust was to protect the trust funds from the primary beneficiary's creditors and that the powers afforded to Doyle, as trustee, by the trust instrument do not defeat that intent.

The business relationship underlying this case began in 1977 when respondents Michael Morrison and others loaned substantial funds to a corporation, in which Doyle and his brother claimed to be the only shareholders. Doyle personally guaranteed the loans, but later defaulted on the guarantee. Respondents commenced suit against Doyle and his brother in 1979, alleging breach of contract; they received a judgment against Doyle in 1993 in the amount of $55,954.19 After various other attempts to enforce the judgment, in 1996 respondents sought a preliminary order of attachment of certain trust assets, for which Doyle was both the trustee and the beneficiary, and a temporary restraining order to prevent Doyle transferring

any of the trust assets. The Morrisons alleged that Doyle had fraudulently transferred money and property from the trust to defraud the respondents. The trial court granted the Morrisons' motion for an order of attachment, stating that "[d]ue to extraordinary circumstances, claimant's interests cannot be protected pending hearing by an appropriate order of the court other than by directing a pre-hearing seizure of property."

After a hearing on the issue, the trial court concluded that the trust at issue was not a spendthrift trust and was therefore subject to attachment by Doyle's creditors. The trial court also found that the underlying claim against Doyle sounded in contract, but was premised on Doyle's having committed an intentional fraud against the Morrisons, thereby providing a basis for the attachment under Minn.Stat. § 570.02, subd. 1(4) (1996).[1] Pursuant to these findings, the trial court granted the Morrisons' application for attachment and a temporary restraining order.

Doyle appealed to the court of appeals and it affirmed the judgment of the trial court, concluding that the trust was not an implied spendthrift trust because "Doyle, as trustee, * * * has the discretion to distribute both the income and the principal of the trust to himself as he sees fit." *Morrison v. Doyle,* 570 N.W.2d 692, 697 (Minn.App.1997). The court of appeals further held that there is ample evidence in the record to support the trial court finding that Doyle "assigned, secreted and disposed of non-exempt property with intent to delay and defraud his creditors, the Morrisons," and that Doyle committed an intentional fraud against the Morrisons. *Id.* at 699. The court of appeals relied upon these findings of fact as the basis justifying the issuance of the order of attachment to provide security for satisfaction of the Morrisons' judgment against Doyle. *Id.* at 699–700.

The facts regarding the creation of the trust at issue here are undisputed. Veronica Doyle, mother of appellant Doyle, died on February 12, 1988, and in her will she left one-sixth of her residual estate to her daughter-in law, Lois Doyle, Doyle's wife. Veronica Doyle stated in the will that she intentionally did not provide for her son as she had otherwise provided for him in her lifetime. Lois Doyle died on May 14, 1988, and left a will in which she devised the residue and remainder of her estate into a trust that she had previously created on January 5, 1988. The probate court found that Lois Doyle's will was a "pour-over" will. Therefore, the money inherited by Lois Doyle from Veronica Doyle was transferred into the trust at issue in this case.

The trust instrument itself named Lois Doyle as both the grantor and the trustee; Doyle was designated as "attorney-in-fact" and given the power to act for Lois Doyle for purposes of the trust agreement only. He was also named as the primary beneficiary. Doyle's four children were named as residual beneficiaries. Upon Lois Doyle's death, all of the beneficiaries of the trust signed a consent agreement and stipulation appointing Doyle as the successor trustee to the trust. This stipulation stated that "it was the intent of Lois M. Doyle, and all of the [beneficiaries] that upon Lois M. Doyle's death that William G. Doyle would succeed her as Trustee of the Trust;" it was approved by the district court. Therefore, Doyle became both the primary beneficiary and the trustee of the Lois Doyle trust.

The trust instrument did not contain a specific "spendthrift clause," but did contain the following provisions, which have a bearing on today's decision:

3. The trust shall continue upon the death of the Grantor for the benefit of WILLIAM DOYLE lasting his lifetime. The trustee shall pay the income and such amounts of the principal as the Trustee in its discretion may determine for the beneficiary's education, support, health, and maintenance.

\* \* \* \* \* \*

---

1. Minnesota Statute § 570.02, subd. 1(4) (1996) provides that "[a]n order of attachment that is intended to provide security for the satisfaction of a judgment may be issued * * * when the respondent has committed an intentional fraud giving rise to the claim upon which the civil action is brought."

6. Early Termination of the Trust. If at any time the principal of the Trust should fall to a value which would make the Trust uneconomical in the opinion of the Trustee, the Trustee may in its sole discretion terminate the Trust and pay over the remaining principal and income to the Grantor if he is living (and in such event the Trustee will notify the other beneficiaries of the Trust's early termination), and if not living, then to, or for the benefit of, any one or more of the income beneficiaries designated in Article 3 above, or, if there are none such to take, as provided in Article 4 above.

7. Powers and Duties of Trustee. The Trustee shall have the full power, subject to direction of Grantor, and without prior authority from any court to do everything necessary for the proper administration of this trust.[2]

\* \* \* \* \* \*

12. Payment to Beneficiaries. The Trustee may make any payments of income or principal directed to be made to any beneficiary under any provision of this Agreement, including any distribution on termination, or resignation.

1. by paying the same directly to any beneficiary or to his spouse, parent, adult sibling, legally appointed guardian, committee, conservator, or custodian, or

2. by depositing same in any savings account in the name of any of the beneficiaries, whether alone or in joint names including any person designated by the Grantor in accordance with the provisions of Article 11.

and upon making any such payment or deposit the Trustee shall have no further responsibility with respect to the same or to the application or disposition of the moneys so deposited.

In order to resolve this matter, we must determine whether the language of this trust document and the manner in which it was implemented require its designation as a "spendthrift trust," replete with all of the legal protections afforded to the beneficiary of such a trust.

The underlying legal principles are not novel. A spendthrift trust is a trust in which the power of alienation [3] has been suspended. *In re Moulton's Estate*, 233 Minn. 286, 290, 46 N.W.2d 667, 670 (1951).

> The validity of a spendthrift trust is upheld on the theory that the owner of property, in the free exercise of his will in disposing of it, may secure such benefits to the objects of his bounty as he sees fit and may, if he so desires, limit its benefits to persons of his choice, who part with nothing in return, to the exclusion of creditors and others.

*Id.*, 233 Minn. at 290–91, 46 N.W.2d at 670 (citations omitted).

Generally, to create a spendthrift trust, the trust agreement must simply include a spendthrift clause. *See, e.g., In re Trust Created Under Agreement with McLaughlin*, 361 N.W.2d 43, 45 (Minn.1985). The following is an example of a spendthrift clause:

> Neither principal nor income of any trust nor any beneficiary's interest therein, while undistributed in fact, shall be subject to alienation, assignment, encumbrance, appointment or anticipation by the beneficiary, nor to garnishment, attachment, execution or bankruptcy proceedings, nor to claims for alimony or support or any other claims of any creditor or other person against the beneficiary, nor to any other transfer, voluntary or involuntary, from the beneficiary.

*Id.* However, we have also provided the asset protections afforded in a spendthrift trust when the trust agreement did not include an express spendthrift provision. See *Moulton's Estate*, 233 Minn. at 302–03, 46 N.W.2d

---

2. The trust document also provides a list of powers, none of which implicate the trustee's duties to distribute trust income and principal to the beneficiaries. The powers referred to in this provision involve the power to make financial investment decisions that accompany the administration of a trust.

3. The power of alienation is the "power to sell, transfer, assign or otherwise dispose of property." Black's Law Dictionary 1171 (6th ed.1990).

at 675–76; see also *First Nat'l Bank of Canby v. Olufson,* 181 Minn. 289, 291, 232 N.W. 337, 338 (1930). "No particular form of words is necessary to create a spendthrift trust. It is sufficient if by the terms of the trust the settlor manifests an intention to impose the restrictions common to such trust." *Moulton's Estate,* 233 Minn. at 291, 46 N.W.2d at 670.

 In cases such as this one, where the trust agreement does not contain a specific spendthrift clause, we look to the settlor's intent as evidenced by the language used in the trust agreement. *Id.,* 233 Minn. at 295, 46 N.W.2d at 672.

> In that determination we are to be guided by the well-known principle that the entire instrument must be considered, aided by the surrounding circumstances, due weight being given to all its language, with some meaning being given, if possible, to all parts, expressions and words used, discarding and disregarding no parts as meaningless, if any meaning can be given them consistently with the rest of the instrument.

*In re Watland,* 211 Minn. 84, 91, 300 N.W. 195, 198 (1941) (quotation omitted).

What indications of the settlor's intent are present in this case? We may begin with the death of Doyle's mother and her decision to disinherit her son William, apparently in order to protect him from his creditors. The record here includes deposition testimony of William Seltz, who prepared Veronica Doyle's will, to the effect that she intended for her estate to be equally divided between all six of her children, but that she wanted to protect Doyle's share from his creditors. Therefore, according to Seltz, she asked him to structure her will so that William's "share" passed instead to his wife. It is primarily this one-sixth portion of Doyle's mother's estate that became the corpus of the trust at issue here.

 Next, we may look to the language of the trust document itself, because the settlor's intent can be determined by looking to the restrictions placed upon the trustee as to distribution of income and principal to the beneficiaries of the trust. *See Moulton's Estate,* 233 Minn. at 291, 46 N.W.2d at 670 (stating that intent can be inferred by looking to the terms of the trust to determine whether the settlor imposed the restrictions common to such trust). Here the settlor provided that the trustee "shall pay the income and such amounts of the principal as the Trustee in its discretion may determine for the beneficiary's education, support, health, and maintenance." While many spendthrift trusts contain more explicit limitations, we conclude that these restrictions represent the kind of ascertainable standards that are sufficient to guide the actions of the beneficiary and against which his conduct can be measured. Furthermore, the specific language at issue has been, since the time the trust was created, actually mirrored in the legislative scheme that governs distribution of trust assets:

> No trustee may exercise or participate in the exercise of * * * any power of the trustee to make discretionary distributions of either principal or income to or for the benefit of the trustee as beneficiary, unless by the terms of the will or other written instrument those discretionary distributions are limited by an ascertainable standard relating to that trustee's health, education, maintenance, or support * * *.

Minn.Stat. § 501B.14, subd. 1 (1996). The trust language also tracks the Internal Revenue Service's statutory provisions on the creation of ascertainable standards that limit distribution of trust assets. *See* I.R.C. § 2041(b)(1)(A)(1994).

We also conclude that the type of language used in the trust document at issue here is consistent with language to which we have attached significant meaning in our older trust cases. *See In re Tuthill's Will,* 247 Minn. 122, 76 N.W.2d 499 (1956); *see also McNiff v. Olmsted County Welfare Dep't,* 287 Minn. 40, 176 N.W.2d 888 (1970). Thus, based upon the past cases that direct us to act on the manifest intent of the settlor, we hold that the trust at issue here is a spendthrift trust, thus defeating the claims of the Morrisons to attach the trust assets.[4]

---

4. Ironically, the Morrisons admit that the principal motivation for creating the trust was to avoid

Further, although we disagree with the conclusions of the lower courts, we are not unmindful of the concerns they raise. The trial court and the court of appeals relied on three bases to conclude that the trust at issue here is not a spendthrift trust: (1) that there was a merger of Doyle's legal interest as trustee and his beneficial interest; (2) that Doyle, as trustee, had the authority to distribute both income and amounts from the principal at his discretion pursuant to Paragraph 3 of the trust agreement, and that Doyle may have distributed trust funds in violation of the trust agreement;[5] and (3) that Doyle, as trustee, has the authority to terminate the trust pursuant to Paragraph 6 of the trust agreement. *See Doyle*, 570 N.W.2d at 697–98. In addition, the Morrisons rely heavily on their assertions that Doyle, as trustee, has violated the terms of the trust agreement by distributing trust monies to himself and the other beneficiaries and by attempting to conceal the fact that he has received money from the trust.

However, none of these bases defeats the critical provisions of the trust that make it a spendthrift trust. First, there is no merger of Doyle's legal and beneficial interests simply because he is both the trustee and the primary beneficiary of the trust. The Minnesota legislature has spoken to this issue: "No trust is invalid or terminated, and title to trust assets is not merged, because the trustee or trustees are the same person or persons as the beneficiaries of the trust." Minn.Stat. § 501B.13, subd. 1 (1996). And we assume that if the trust is not made utterly invalid by virtue of the trustee and the beneficiary being the same person, its "spendthrift" characteristics are not defeated either.

Further, the Restatement (Second) of Trusts § 99 discusses the ramifications of having a primary beneficiary also act as the trustee of a trust. It states:

their collection of the debt owed to them by Doyle, and it is this fact on which they rely heavily to support their claim of fraud.

5. The court of appeals attempts to distinguish this case from *Moulton's Estate* by stating that "Doyle, as trustee, * * * has the discretion to distribute both the income and the principal of the trust to himself as he sees fit." *Doyle*, 570

There can be a trust in which one of several beneficiaries is the sole trustee. The trustee holds the legal title to the trust property, and the beneficiaries, including the beneficiary who is also the trustee, have equitable interests the extent of which is determined by the terms of the trust. There is no partial merger of the legal interest and the equitable interest. *The beneficiary who is also trustee does not hold any part of the property free of trust.* A creditor of this beneficiary can reach his interest only by a proceeding appropriate for reaching an equitable interest, and, *if it is a spendthrift trust, a creditor cannot reach his interest.*

Restatement (Second) of Trusts § 99, cmt. (2) (1959) (emphasis added). Thus, we attach no special importance to the fact that Doyle has been both trustee and primary beneficiary.

Second, although Doyle can make distributions from both the income and the principal of the trust, as noted above, the trust agreement does provide limitations on the purposes for which distributions from both income and principal can be made. Article 3 of the trust agreement limits distribution to the purposes of "education, support, health, and maintenance." Therefore, there are limits to Doyle's power of distribution, contrary to the court of appeals' conclusion that Doyle "has the discretion to distribute both the income and the principal of the trust to himself *as he sees fit.*" *Doyle*, 570 N.W.2d at 697 (emphasis added). Similarly, the power to terminate the trust is not determinative because article 6 of the trust agreement limits that power to the occasion when the trust is uneconomical. Therefore, Doyle as trustee does not have unlimited authority.

Finally, the alleged improper actions of Doyle as trustee are irrelevant to the question of whether the trust is a spendthrift

N.W.2d at 697. In *Moulton's Estate,* the trustee was not also a beneficiary so these dual implications were not specifically addressed. 233 Minn. at 289, 46 N.W.2d at 669. However, the law of implied spendthrift trusts as set forth by *Moulton's Estate* is not dependent upon who acts as trustee.

trust. There are five different ways that a court of law may remedy a trustee's abuse of discretion, none of which include eliminating the spendthrift nature of the trust.

> The beneficiary of a trust can maintain a suit (a) to compel the trustee to perform his duties as trustee; (b) to enjoin the trustee from committing a breach of trust; (c) to compel the trustee to redress a breach of trust; (d) to appoint a receiver to take possession of the trust property and administer the trust; [or] (e) to remove the trustee.

Restatement (Second) of Trusts § 199. While it is true that these remedies are generally available only to other beneficiaries, and not to third-party creditors, that is precisely the point of the creation of a spendthrift trust: the assets contained within it are not available to persons outside the trust relationship. Given these basic concepts of trust law, we conclude that it would be inappropriate to allow Doyle's judgment creditors to gain an attachment to the trust simply because Doyle, as trustee, may have abused his discretion in distributing trust funds.

Because we conclude that Lois Doyle, the settlor of the trust at issue, intended to create a spendthrift trust, we reverse the judgment of the court of appeals and hold that the instant trust is an implied spendthrift trust and, for that reason, the Morrisons cannot obtain an attachment to the trust.

Reversed.